UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THO VAN HA,<br><br>                              Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                              Defendant. | Case No.:  13cv1211-LAB(BLM)<br><br>**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 72, 79, 80, 83]** |

Plaintiff Tho Van Ha brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of his claim for social security disability benefits.  See ECF No. 1.  Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 72-1 ("MSJ")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 79-1 & 80–1 ("Oppo.")],[1] and Plaintiff's Reply in Support of his Motion [ECF No. 83 "Reply"].  Defendant did not file a Reply.  See Dkt.

---

[1] Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment appear on the docket as two documents. See ECF Nos. 79-1, 80-1. However, the content of the documents is the same. See id. For clarity, the Court will refer to Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment as one document, namely, "Oppo."

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** and Defendant's Cross-Motion for Summary Judgment be **DENIED**.

## PROCEDURAL BACKGROUND

On January 4, 2010, Plaintiff filed an application for Title XVI Supplemental Security Income benefits ("SSI"), alleging disability beginning on January 1, 2002. AR at 137–43. Plaintiff's application was denied on April 16, 2010. Id. at 48–51. After reconsideration, Plaintiff's application was denied again on July 22, 2010, and on August 3, 2010, Plaintiff requested an administrative hearing. Id. at 55–59, 61.

A hearing concerning Plaintiff's denial of benefits was held on September 23, 2011 before Administrative Law Judge ("ALJ") Eve B. Godfrey. Id. at 26. During the hearing, Plaintiff amended his alleged disability date onset from January 1, 2002 to December 21, 2009. Id. at 15, 31. On December 5, 2011, ALJ Godfrey issued a written decision finding that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. Id. at 15, 21. Plaintiff submitted a request for the Appeals Council to review ALJ Godfrey's decision. See id. Because the Appeals Council found no basis to review the decision, ALJ Godfrey's December 5, 2011 order became the Commissioner's final decision. Id.

Plaintiff initiated the instant litigation on May 21, 2013, when he filed a Complaint in this Court seeking judicial review of the Commissioner's denial of benefits. See ECF No. 1. On December 5, 2014, Plaintiff filed a Motion for Summary Judgment alleging that the ALJ erred by finding Plaintiff's impairments to be non-severe, and by disregarding the opinions of Plaintiff's treating physicians. ECF No. 35-1. Plaintiff further alleged that the Appeals Council erred by refusing to consider evidence Plaintiff submitted in connection with his request for review. Id. at 2–25. Defendant filed a Cross-Motion and Opposition to Plaintiff's Motion, and Plaintiff filed a Reply. ECF Nos. 36-1, 37-1, 38.

///

On June 19, 2015, this Court issued a Report and Recommendation recommending that Plaintiff's Motion for Summary Judgment be denied and Defendant's Cross-Motion for Summary Judgment be granted. ECF No. 40. On July 10, 2015, Plaintiff filed an objection to the Court's Report and Recommendation, as well as a request for judicial notice of certain documents referenced in Plaintiff's objection. ECF Nos. 41, 42. On August 14, 2015, District Judge Burns issued an Order denying Plaintiff's objections and adopting the June 2015 Report and Recommendation, which effectively denied Plaintiff's Motion for Summary Judgment and granted Defendant's Cross-Motion. ECF No. 44.

Meanwhile, on January 25, 2012, Plaintiff submitted a second application for SSI and on April 28, 2014, Plaintiff received a favorable ruling from ALJ Mason D. Harrell, Jr. AR at 651. ALJ Harrell determined that Plaintiff had been disabled since the date Plaintiff submitted his second SSI application, January 25, 2012. Id. at 647.

On September 17, 2015, Plaintiff appealed District Judge Burns' August 2015 Order to the Ninth Circuit Court of Appeals. ECF No. 46. On June 9, 2016, the Ninth Circuit issued an order instructing the District Court to vacate its August 2015 order and remand the case to the Commissioner for further proceedings. ECF No. 47. In support of its order, the Ninth Circuit cited and quoted Luna v. Astrue, 623 F.3d 1032, 1034–35 (9th Cir. 2010), which stated that "[t]he 'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application indicates that further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different." ECF No. 47. The District Court complied with the Ninth Circuit's instruction. ECF Nos. 48, 50.

Based on the Courts' orders, the Appeals Council vacated ALJ Godfrey's December 5, 2011 decision and remanded the case for reconsideration. AR at 583. The Appeals Council explained that "[w]hile [Plaintiff] did not allege mental impairments in the current claim and all the mental records in the file are dated after the December 5, 2011 [ALJ] decision . . . subsequent files appear to describe conditions that existed prior to the December 5, 2011 decision." Id. at 584. The subsequent files referenced by the Appeals Council included medical

findings by Dr. Harry C. Henderson, Dr. Milton E. Lessner, Dr. Don E. Miller, and Dr. Jaga Glassman.  Id.  The Appeals Council stated that the ALJ "should consider whether [Plaintiff] had any medically determinable mental impairments during the period at issue and whether there are any resulting limitations."  Id.  Specifically, the Appeals Council directed the ALJ to "[c]onsider whether [Plaintiff's] mental impairments relate back to the period the [ALJ] adjudicated (prior to January 25, 2012) and if they do, whether [Plaintiff] meets or equals a listing and what limits result from his mental impairments."  Id.  "In evaluating this issue, the ALJ [was instructed to] . . . include [in] the current electronic file, the relevant records from the subsequent claim file."  Id.  The period in review is limited to the time period between December 21, 2009 and January 25, 2012 ("Time Period 1").  Id.

     On January 2, 2018, pursuant to the Order of the Appeals Council, Plaintiff and his attorney attended a hearing before ALJ Mark B. Greenberg.  Id. at 445.  On April 3, 2018, ALJ Greenberg issued a written decision finding that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act.  Id. at 434.  On July 9, 2018, District Judge Burns issued an Order granting Plaintiff's motion to reopen the case and on July 16, 2018, this Court issued a briefing schedule for Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion.  ECF Nos. 60, 61.

     The Court granted several joint motions to extend filing deadlines between late 2018 and early 2019.  See generally Dkt.  Plaintiff filed his Motion for Summary Judgment on December 12, 2018.  MSJ.  On April 1, 2019, Defendant filed an Opposition and Cross-Motion.  Oppo.  On April 30, 2019, Plaintiff filed a Reply.  Reply.

## RELEVANT ALJ DECISIONS AND HEARINGS

### A. ALJ Harrell's Favorable Decision, April 28, 2014

     On April 28, 2014, ALJ Harrell issued a written decision finding Plaintiff disabled under section 1614(a)(3)(A) of the Social Security Act ("SSA"), beginning on January 25, 2012.  AR at 651.  Initially, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since" the date Plaintiff filed his second SSI application.  Id. at 649.  Second, the ALJ determined that Plaintiff "ha[d] the following severe impairments: major depression; left-sided trigeminal

neuralgia; and trigeminal schwannoma." Id. Third, the ALJ determined that Plaintiff's impairments met "the criteria of section 12.04, [Part A and Part B]." Id. The ALJ explained that Plaintiff "had paranoia, suicidal thoughts, loss of interest in almost all activities, decreased energy, and difficulty concentrating." Id.

The ALJ noted Plaintiff's testimony "that he was unable to work because of severe pain and depression [among other things]" and that "he had constant pain in his back that radiated to his right upper extremity, and a burning sensation in his eye." Id. Furthermore, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re generally credible." Id. at 650. As to the medical evidence considered, the ALJ cited reports and/or examinations from Drs. Glassman, Henderson, Lessner, Jacobs, Haaland, and Sabourin.[2] See id. at 650–51.

The ALJ noted that Dr. Lessner's "report dated January 28, 2012 assessed [Plaintiff] with major depression with bizarre mentation features; post-traumatic stress disorder (PTSD); and avoidant personality disorder." Id. at 650. The ALJ credited Dr. Henderson's February 4, 2012 examination as "show[ing] [that Plaintiff] was unable to recall three nouns after three minutes . . . [,] [h]e was unable to perform serial threes[,] and his ability to concentrate upon even simple new tasks was poor." Id. The ALJ further noted that Plaintiff presented as "lethargic and showed little interest in outside activities." Id. Dr. Henderson's March 13, 2014 report diagnosing Plaintiff with "major depression, recurrent; and PTSD, chronic," was also noted in the ALJ's decision. Id. The ALJ stated that she gave significant weight to Dr. Henderson, Plaintiff's treating physician, because "the opinions of the treating physician are considered more reliable because of the duration of the treating relationship." Id.

---

[2] Though not stated by name in ALJ Harrell's decision, the January 28, 2012 report referenced was that of Dr. Lessner. See id. at 650. In addition, ALJ Harrell noted reports of State agency medical assessments, which are likely those of Dr. Jacobs, Dr. Haaland, and Dr. Sabourin, since they are the only State agency medical consultant reports on record. See id. at 295–99, 302–303, 312, 650.

As to Dr. Glassman, the ALJ noted the diagnoses of "probable pain disorder with medical and psychological factors; depression, not otherwise specific; some evidence of poor effort/exaggeration of deficit/malingering; and rule out post-traumatic stress disorder . . . ." Id. However, the ALJ did not state the weight she gave to Dr. Glassman's opinions. See id.

The ALJ gave little weight to the State Agency medical and psychological consultants (Drs. Sabourin, Haaland, and Jacaobs), because "evidence received at the hearing level show[ed] that [Plaintiff] is more limited than determined by State [A]gency consultants," and because "the State agency consultants did not adequately consider [Plaintiff's] subjective complaints." Id. at 651. ALJ Harrell did not discuss Plaintiff's alleged physical impairments "because a favorable decision was reached considering his mental impairments alone." Id.

## B. ALJ Greenberg's Unfavorable Decision, April 3, 2018

On April 3, 2018, ALJ Greenberg issued a written decision that Plaintiff had not been disabled within the meaning of the SSA during Time Period 1. Id. at 426. Initially, the ALJ determined that Plaintiff did not engage in substantial gainful activity during Time Period 1. Id. at 428. Next, the ALJ concluded that Plaintiff had the following medically determinable impairments: "neuralgia, atypical facial pain and headaches, mild bursitis, hearing loss, minimal degenerative changes, hypertension, depression, and posttraumatic stress disorder." Id. At the third step, the ALJ determined that Plaintiff "d[id] not have an impairment or combination of impairments" as defined by the Regulations, because Plaintiff's impairments or combination of impairments did not impose a significant limitation on Plaintiff's ability to work for the required twelve (12) consecutive months. Id.

In reaching this decision, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms" but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." Id. at 430. The ALJ then conducted a thorough review of the relevant medical evidence related to Plaintiff's physical impairments. Id. at 430–33.

///

As to Plaintiff's alleged mental impairments, the ALJ stated that "the record was limited in regard to mental health treatment and evidence during the period at issue, and [Plaintiff] did not routinely complain of mental issues to his physicians during physical examinations." Id. at 431. The ALJ noted that Plaintiff's claim during his 2018 testimony that he was depressed after his surgery[3] was undercut by his failure to mention this symptom to any of his treating physicians at the time. Id. at 431–32. The ALJ then discussed the opinions of four doctors, only one of whom performed a psychological evaluation of Plaintiff, Dr. Henderson. Id. at 432–33.

The ALJ acknowledged that Dr. Henderson examined Plaintiff in December 2011, January 2012, and February 2012 and "opined that [Plaintiff] had been permanently disabled since 1992, and he had marked restrictions in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace (Ex. 26F)." Id. at 432. The ALJ gave this opinion "little weight" finding that it was "not supported by a majority of the objective medical evidence" and "was given on an issue reserved to the Commissioner." Id. at 433. Finally, because Plaintiff "has medically determinable mental impairments," the ALJ considered the "four broad areas of mental functioning [] known as the 'paragraph B' criteria" and found Plaintiff's mental impairments were no more than "mild" and therefore "non-severe." Id. at 433–34. The ALJ did not discuss the reports or opinions of Drs. Lessner, Miller, or Glassman, the other doctors identified by the Appeals Council. See id. at 425–34.

## **LEGAL STANDARD**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. §405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

///

---

[3] ALJ Greenberg does not state which of Plaintiff's surgeries he is referencing, but after review of the hearing transcript, Plaintiff seemed to be testifying to his depression following his May 2009 surgery. See id. at 431, 454.

13cv1211-LAB(BLM)

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citations omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. See Batson, 359 F.3d at 1193. This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her conclusion. See Batson, 359 F.3d at 1193. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the SSA for further proceedings. Id.

## DISCUSSION

Plaintiff challenges ALJ Greenberg's April 3, 2018 decision on the following grounds: (1) the decision violates both the Ninth Circuit Court remand Order and the Appeals Council's order; (2) ALJ Greenberg failed to fully develop the record, resulting in missing reports; (3) the finding that Plaintiff's mental impairments were non-severe improperly discounted reports from treating physicians, while crediting reports from non-treating medical examiners; (4) the finding that Plaintiff's physical impairments were non-severe improperly relied on an orthopedic exam and non-examining expert, while discounting medical records from Plaintiff's treating physicians; (5) ALJ Greenberg improperly concluded that Plaintiff has a residual functional capacity of medium, and expert testimony from a prior administrative hearing attests to the severity of Plaintiff's

impairments; and (6) the decision improperly discounted Plaintiff's testimony as to the severity of his pain and depression. <u>See generally</u> MSJ; Reply.

### A.    The Ninth Circuit Remand and Appeals Council's Order

Plaintiff argues that in implementing the Ninth Circuit's remand order, the Appeals Council directed the ALJ to consider as "new evidence" reports from Drs. Lessner, Miller, Grisolia, Henderson, and Glassman. MSJ at 10–17; Reply at 2. Plaintiff further argues that the Appeals Council "explicitly ordered" the ALJ "to consider 2012 medical evidence that establish[ed] [Plaintiff] had been severely impaired well before 2012 . . . ." MSJ at 13; <u>see also</u> Reply at 2– 5. Plaintiff contends that because ALJ Greenberg did not cite to or discuss the reports of the identified doctors, the April 3, 2018 determination contravened both "the Ninth Circuit Court's mandate . . . and the order of the Appeals Council," which violated Plaintiff's right to Due Process. MSJ at 13, 17–18; <u>see also</u> Reply at 2, 11.

Defendant argues that Plaintiff misrepresents the Appeals Council's instructions regarding the consideration of the new evidence. Oppo. at 6. Defendant argues that the Appeals Council did not conclusively determine that the post-January 25, 2012 evidence established that Plaintiff's impairments were severe 'well before 2012.'" <u>Id.</u> Defendant claims the Appeals Council merely "noted that the 'subsequent files appear[ed] to describe conditions that existed prior to the December 2011 decision,' and instructed the ALJ to '[c]onsider whether [Plaintiff's] mental impairments relate[d] to'" Time Period 1. <u>Id.</u> (citing AR at 584).

The Ninth Circuit decision instructed the District Court to "vacate its August 14, 2015 judgment and remand the case to the Commissioner for further administrative proceedings." ECF No. 47 at 1. In its decision, the Ninth Circuit cited <u>Luna v. Astrue</u> and quoted (as a parenthetical) the following holding from that Court:

> The 'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ as part of the first application indicates that further consideration of the factual issues is appropriate to determine whether the outcome of the first application should be different.

ECF No. 47 at 1 (quoting <u>Luna v. Astrue</u>, 623 F.3d 1032, 1034–35 (9th Cir. 2010)). No other

guidance or analysis was provided.  See ECF No. 47.

In an order dated June 21, 2016, the Appeals Council vacated ALJ Godfrey's December 5, 2011 decision and remanded the case to ALJ Greenberg for further consideration.  AR at 583.  The Appeals Council noted that ALJ "Mason Harrell, Jr. issued a fully favorable decision on April 28, 2014, finding [Plaintiff] disabled since January 25, 2012," the date on which Plaintiff filed his second application for SSI.  Id.  The Appeals Council further noted that ALJ Harrell "cited to the significant findings . . . [of] Dr. Henderson who treated claimant on December 12, 2011, January 8, 2012, and February 4, 2012."  Id. at 583–84.  The Appeals Council quoted Dr. Henderson's finding that Plaintiff's "mental disability is permanent and stationary since at least 1992 causing him to be unable to work."  Id. at 584.  In describing ALJ Harrell's decision, the Appeals Council further stated: "[Plaintiff] was also examined by Milton Lessner, Ph.D., on January 28, 2012 . . . and Don Miller, Ph.D. on May 8, 2012 . . . and those exams supported Dr. Henderson's findings."  Id.  The Appeals Council then noted Dr. Glassman's findings as well as those of the State Agency medical consultants.  Id.  Finally, in directing ALJ Greenberg to consider medical records and evidence created after December 5, 2011, the Appeals Council stated:

> While [Plaintiff] did not allege mental impairments in the current claim and all the mental records in the file are dated after the December 5, 2011 decision, these subsequent files appear to describe conditions that existed prior to the December 5, 2011 decision.  The Administrative Law Judge should consider whether [Plaintiff] had any medically determinable mental impairments during the period at issue and whether there are any resulting limitations . . . .
>
> Upon remand, the Administrative Law Judge will: [c]onsider whether [Plaintiff's] mental impairments relate back to the period the Administrative Law Judge adjudicated (prior to January 25, 2012) and if they do, whether [Plaintiff meets or equals a listing and what limits result from his impairments.  In evaluating this issue, the Administrative Law Judge should include in the current electronic file, the relevant records from the subsequent claim file.

Id.

Moving to the parties' contentions, Defendant is correct that the Appeals Council did not conclusively determine that Plaintiff's impairments were severe well before 2012.  See id. at

583–85 (Appeals Council order directing ALJ to consider specific evidence, but not establishing the result). Plaintiff is correct, though, that the Ninth Circuit and Appeals Council remanded the case for consideration of additional evidence. <u>See generally</u> ECF No. 47. The Ninth Circuit did not dictate the specific evidence the ALJ had to consider; rather, like it did in <u>Luna</u>, the Ninth Circuit simply stated that there was a "reasonable possibility" that the evidence supporting the 2014 grant of benefits might affect the disability determination for Time Period 1 and directed the ALJ consider the post-December 5, 2011 evidence to determine whether the outcome of the Time Period 1 application should be different. <u>See</u> <u>id.</u>

The Appeals Council, on the other hand, was more direct. The Appeals Council specifically identified the opinions and evidence that ALJ Greenberg had to consider. AR at 583–84. The Appeals Council also explained why the identified opinions, evidence, and analysis may be relevant to determining and evaluating Plaintiff's mental impairments in Time Period 1. <u>See</u> <u>id.</u> An ALJ is required to "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R § 416.1477(b); <u>see also</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 635–36 (9th Cir.2007) (citing 67 Fed. Reg. 57859-02) (Sept. 12, 2002)) (explaining, in the context of a claimant's testimony, that Social Security rulings are binding on other areas of the SSA and serve as precedent to be relied upon in deciding cases); <u>Miranda v. Astrue</u>, 2009 WL 2905894, at *4–5 (C.D. Cal. Sept. 4, 2009) (reversing and remanding an ALJ's decision for failure to reevaluate and weigh the opinion of the plaintiff's treating physician when the Appeals Council specifically directed the ALJ to do so); <u>Facen v. Colvin</u>, 2013 WL 4516121, at *14–15 (N.D. Cal. Aug. 23, 2013) (remanding a decision in part because "[t]he ALJ failed to review additional evidence . . . despite being instructed to do so by the Appeals Council."); <u>but see</u> <u>Rogers v. Astrue</u>, 2008 WL 850131, at *16 (E.D. Cal. Mar. 28, 2008) (affirming a determination of non-disability where the ALJ's failure to strictly adhere to the Appeals Council's order resulted only in harmless error); <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying the harmless error standard when the error did "not negate the validity of the ALJ's ultimate conclusion.").

///

Here, the Appeals Council identified four doctors—Henderson, Lessner, Miller, and Glassman—who examined Plaintiff after December 5, 2011[4] and supported the conclusion that Plaintiff had moderate to severe mental impairments.  AR at 584.  The Appeals Council also stated that Dr. Henderson opined that Plaintiff's "mental disability is permanent and stationary since at least 1992 causing him to be unable to work" and the exams performed by Drs. Lessner and Miller "supported Dr. Henderson's findings."  Id.  The Appeals Council explained that "all the mental records in the file are dated after the December 5, 2011 decision [but] these subsequent files appear to describe conditions that existed prior to the December 5, 2011 decision" so it instructed the ALJ to consider whether the subsequent medical records established that Plaintiff had mental impairments during Time Period 1.  Id.  Despite this clear directive, ALJ Greenberg did not discuss the examinations or opinions of Drs. Lessner, Miller, or Glassman.  See id. at 425–34.  The ALJ also did not comply with the Appeals Council's directive to include "in the current electronic file[] the relevant records from the subsequent claim file" [AR at 584] because he failed to include the report and medical records of Dr. Glassman.  See generally id. at 425–34, 584.  The reports and records from Psychologists Lessner and Miller are included in the administrative record and are discussed below.

### 1.  ALJ Greenberg's Exclusion of Dr. Miller, Dr. Lessner, and Dr. Glassman

After examining Plaintiff in February, March, April, and May of 2012, Dr. Miller's May report diagnosed Plaintiff with (1) Major Depressive Disorder, Severe, with Psychosis; (2) Posttraumatic Stress Disorder; and (3) Amnestic Disorder (due to chronic anxiety, depression, and insomnia).  Id. at 743.  Dr. Miller scored Plaintiff at 35 on the Global Assessment Functioning Scale ("GAF").  Id.  To support his findings, Dr. Miller explained that he attempted to "administer [to Plaintiff] three of the six Verbal scales of the" Wechsler Adult Intelligence Scale ("W.A.I.S.").  Id. at 741.  Plaintiff "was able to do only very simple arithmetic," and while he "was able to add 4 and 5 and subtract six from 10," Plaintiff "was unable to multiply six times 25 or divide 36 by

---

[4] Dr. Henderson's report states that he examined Plaintiff on December 12, 2011 and January 8, 2012, but the report submitted in connection with Plaintiff's hearing was dated February 4, 2012.  Id. at 856.

six." Id. As to the Similarities Sub-Scale, Plaintiff was unable to give an example of how an orange and banana were alike, or how a dress and a coat were alike. Id. After Plaintiff was told an orange and banana were both fruit and a dress and a coat were both clothing, he was still "unable to give any similarities between any of the other common, cross cultural items on the Similarities Sub-Scale, such as an axe and a saw and a dog and a lion." Id. In addition, Dr. Miller stated that Plaintiff's "short-term memory capacity seems to be greatly reduced" given that Plaintiff was able to repeat backwards only three digits, where "the average individual can repeat back six or seven digits." Id. Extrapolating and prorating Plaintiff's results as to the three Verbal Sub-Scales estimated Plaintiff's verbal I.Q. to "be 55, in the mildly mentally retarded range." Id. Dr. Miller further discussed Plaintiff's flash backs, nightmares, long-term anxiety and depression, and his problems concentrating (among other things). Id. Finally, Dr. Miller attached to his report literature supporting his theory that Plaintiff's long-term and high levels of stress, anxiety, and depression could have led to brain damage through elevated cortisol and adrenal levels. Id. at 742–47. Dr. Miller provided several facts and theories indicating that the identified mental impairments were present during Time Period 1. Id. at 740–45.

Dr. Lessner's report is dated January 28, 2012, just three days after Time Period 1. Id. at 726. Dr. Lessner's report diagnosed Plaintiff with (1) Major Depression with Bizarre Mentation Features, and (2) Posttraumatic Stress Disorder. Id. at 735. Dr. Lessner also scored Plaintiff at 40 on the GAF. Id. To support his findings, Dr. Lessner first discussed Plaintiff's childhood, including his experience living near Saigon, Vietnam, where he was exposed to "the horrors and atrocities of war." Id. at 727. Dr. Lessner reported that Plaintiff's "sleep has been severely disturbed by the sounds of missiles whistling above, bombs and shells exploding, irreparable damage and destruction to [his] home," and more. Id. Dr. Lessner reported that Plaintiff witnessed "people being blown up alive with their brains literally shattered and parts of their bodies emaciated and covered with blood." Id. at 728. Dr. Lessner also reported that Plaintiff had experienced numerous mental and physical traumas and impairments, during and after his childhood, that negatively impacted his mental health. Id. at 726–30.

///

Dr. Lessner administered the following tests to Plaintiff: (1) the Mooney Problem Check List; (2) the Bender Gestalt Test; (3) the BECK Depression Inventory; and (4) the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"). Id. at 731. As to the test results, Dr. Lessner reported that Plaintiff's MMPI-2 scales were "sufficiently elevated to confirm the presence of serious psychopathology." Id. at 731. Plaintiff's highest MMPI-2 scale score showed that he "is unhappy, dysphoric, and dejected," and other scale scores showed that Plaintiff is "agitated, tense, and jumpy." Id. at 732. Results from the Bender Gestalt Test showed (among other things) overt anxiety, emotional instability, obsessive compulsive rigidity, paranoid caution, depression with feelings of inferiority, and possible psychotic conditions or brain damage. Id. at 733. Results from the BECK Depression Inventory "verified that [Plaintiff] is sad and unhappy most of the time, and feels that the future is hopeless and unimprovable." Id. at 734. As to the Mooney Problem Check List, Dr. Lessner reported that Plaintiff "can't see much very much [sic] out of his left eye and is troubled with blurry upper right eye lids and muscle spasms." Id. at 730.

As mentioned above, Dr. Glassman's report was not included in the administrative record. See MSJ at 10; see generally AR. However, ALJ Harrell's April 28, 2014 decision notes that Dr. Glassman "conducted a complete consultative evaluation of [Plaintiff]" on May 15, 2012, which indicated Plaintiff's "chief complaints were pain and trouble with memory." AR at 650. Dr. Glassman diagnosed Plaintiff "with probable pain disorder with medical and psychological factors; depression, not otherwise specific; some evidence of poor effort/exaggeration of deficit/malingering; and rule out post-traumatic stress disorder." Id. Dr. Glassman's report further indicated that Plaintiff "did not do personal grooming until his wife reminded him," and he "was affectively labile and would suddenly cry on several occasions during the examination." Id. Furthermore, the examination revealed that Plaintiff: (1) had disorganized thought processes; (2) "had difficulty following instructions;" (3) "was unable to repeat three out of three words;" and (4) "recalled zero out of three words after five minutes." Id. Finally, "Dr. Glassman opined [Plaintiff] was moderately impaired in his ability to behave in a socially appropriate manner and get along with others, and to maintain concentration, persistence, and pace." Id.

ALJ Harrell gave "some weight" to Dr. Glassman's opinions in coming to his determination.  Id. at 651.  The Appeals Council's order notes that Dr. Glassman "examined [Plaintiff] on May 15, 2012 and stated this was a complex and difficult case diagnostically and there appeared to be 'some degree of poor effort and exaggeration or deficit' . . . and he opined [Plaintiff] had a moderate degree of limitation."  Id. at 584.

The Appeals Council explicitly named Drs. Miller, Lessner, and Glassman in its remand order, explained why their opinions were potentially relevant to Time Period 1, and directed the ALJ to consider the opinions in making his determination.  See id.  ALJ Greenberg failed to consider opinions from all three physicians and failed to include Dr. Glassman's report in the record.  See id. at 425–34.  As summarized above, all three doctors provided facts, theories, test results, and medical opinions that are relevant to the required determination of whether Plaintiff's mental impairments relate back to Time Period 1.  As such, the ALJ's failure to consider them cannot be considered harmless error.  See Luckett v. Astrue, 2010 WL 3825703, at *8 (E.D. Cal. Sept. 28, 2010) ("[C]ase law in this Circuit supports the proposition that the silent rejection of a doctor's opinion is not harmless error."); Miranda, 2009 WL 2905894, at *5 (remanding the case where "the ALJ failed to address with particularity" a physician's assessment in accordance with the Appeals Council's order).

Similarly, because the ALJ failed to discuss the physicians' opinions, this Court cannot evaluate whether he rejected, ignored, or discounted them.  See Langdon v. Astrue, 2013 WL 5592483, at *4 (S.D. Cal. Oct. 9, 2013) ("Without an explanation, this Court cannot tell if the ALJ rejected or simply ignored that evidence.").  Because the Appeals Council ordered the ALJ to consider the relevant opinions and ALJ Greenberg failed to so—and because the Court cannot supply post-hoc rationalizations for the ALJ—the Court finds that ALJ Greenberg committed reversible error by excluding the opinions of Drs. Miller, Lessner, and Glassman in violation of the Appeals Council's remand order.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); Johnson

13cv1211-LAB(BLM)

v. Berryhill, 2017 WL 3478762, at \*3 (S.D. Cal. Aug. 14, 2017) ("[T]he Court cannot and will not attempt to insert its own *post hoc* rationale for the ALJ's RFC [Residual Functional Capacity] determination."); Langdon v. Astrue, 2013 WL 5592483, at \*5 (S.D. Cal. Oct. 9, 2013) ("This Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") As to the exclusion of Dr. Glassman's report from the administrative record, that issue is discussed further *infra*.

### 2. ALJ Greenberg's Decision as to Dr. Henderson

ALJ Greenberg did discuss Dr. Henderson's opinions that Plaintiff "had been permanently disabled since 1992" and "had marked restrictions in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace" but he gave them "little weight" finding that they were not supported by the majority of the evidence. AR at 433. The ALJ discounted Dr. Henderson's opinion that Plaintiff "ha[s] been permanently disabled since 1992," because this decision is reserved for the Commissioner. Id. While the ultimate decision certainly is reserved for the Commissioner, the law holds that a treating physician's opinion, such as Dr. Henderson's, should be given more weight[5] than opinions of physicians who do not treat the claimant and may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir. 1995)). If a treating physician's opinion is contradicted by the opinion of another physician, the ALJ may properly reject the treating physician's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Id. This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

---

[5] The Court notes that the rule giving deference to a claimant's treating physician is no longer applicable to claims filed on or after March 27, 2017. See 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Instead, certain factors are to be considered in evaluating the record as a whole. See 20 C.F.R. § 416.920c(b)–(c). Because Plaintiff filed his original claim in January 2010, the changes to the treating physician rule are inapplicable to the instant judicial review. See AR at 137–43.

16

interpretation thereof, and making findings." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." <u>Orn</u>, 495 F.3d at 632 (quoting <u>Embrey v. Bowen</u>, 849 F.2d 418, 421–22 (9th Cir. 1988)).

The ALJ provided several reasons for his rejection of Dr. Henderson's opinions.  First, the ALJ stated that Plaintiff "sought treatment for physical impairments during [Time Period 1] and he made limited complaints of mental problems to his other care providers."  AR at 433.  To support this conclusion, ALJ Greenberg relied on the reports from the doctors treating Plaintiff's physical impairments during Time Period 1.  <u>Id.</u> at 430–32.  However, the ALJ failed to consider and address Dr. Henderson's factual findings and explanation as to why Plaintiff may not have complained about his mental impairments during Time Period 1, why Dr. Sabourin (and other doctors who did not treat Plaintiff for an extended period of time) may have incorrectly believed that Plaintiff was not accurate in his reporting of limitations, and how Plaintiff's physical symptoms were commingled with his mental impairments.  <u>See id.</u> at 856–58.  For example, Dr. Henderson noted that Plaintiff's physical symptoms indicated that Plaintiff may have suffered a stroke in 1992, which caused severe vision loss.  <u>Id.</u> at 856.  Dr. Henderson also noted that Plaintiff "suffered severe head pain that culminated in a diagnosis of trigeminal neuralgia and cranial surgery in May 2009.  He continued to suffer residual effects of the trigeminal neuralgia and chronic pain on the left side."  <u>Id.</u>  Dr. Henderson explained that Plaintiff's pain, coupled with his neurological problems and the effort it took Plaintiff to simply function, may have resulted in a situation in which Plaintiff did not have the mental ability to complain about his situation and seek help.  <u>Id.</u> at 857.  This information is relevant to Plaintiff's mental health during Time Period 1 and is precisely the type of evidence the Appeals Council directed the ALJ to consider and yet, the ALJ failed to do so.

The ALJ also did not address any of the reasons or explanations provided by Dr. Henderson for why Plaintiff's prior treating, examining, or consulting doctors did not learn of, notice, or credit Plaintiff's significant mental impairments that Dr. Henderson believes were

present during Time Period 1. For example, Dr. Henderson analyzed Dr. Sabourin's report and noted that while Dr. Sabourin "doubted [Plaintiff's] allegations of pain[] and claim[ed] [Plaintiff] could do repetitive work," Dr. Sabourin failed to address Plaintiff's occipital and trigeminal neuralgia and how that pain was affecting Plaintiff neurologically. Id. at 857. In his evaluation of the evidence, ALJ Greenberg simply stated that Dr. Sabourin "opined [Plaintiff] had no orthopedic restrictions, and . . . noted [Plaintiff] had almost no significant problems." Id. at 432. Again, despite the Appeals Council's directive, the ALJ did not address how, or if, Dr. Henderson's medical records and opinions affected his evaluation of Dr. Sabourin's opinion and the determination of Plaintiff's mental impairments during Time Period 1.

Second, during his summary of Dr. Henderson's relationship with Plaintiff, the ALJ focused on the fact that Dr. Henderson did not examine Plaintiff until after Time Period 1 ended and implied that therefore the evidence was not relevant. Id. at 432. The ALJ explained that biographical and insurance information was obtained four days before Time Period 1 ended and that there was no psychiatric information obtained at that time. Id. The ALJ acknowledged the subsequent tests conducted by Dr. Henderson and that the results indicated mental impairments but dismissed them by concluding that they provided "limited evidence in regard to mental impairments during the period at issue." Id. This analysis missed the import of the Appeals Council's directive. It is undisputed that Dr. Henderson's treating relationship occurred after Time Period 1; the question is whether the information learned during the treating relationship revealed mental impairments that were present during Time Period 1. In that regard, the ALJ failed to consider the detailed analysis provided by Dr. Henderson that established why the test results and medical interactions in 2012 revealed mental impairments that were present during Time Period 1.

Significantly, the ALJ also failed to consider Dr. Henderson's March 13, 2014 report. Id. at 941–42. In that report, Dr. Henderson indicated that he has been treating Plaintiff bi-monthly since December 2011, and he has reviewed the "medical records consisting of Dr. Sidrick's treating notes, and neurologist Dr. Grisolia's treating notes." Id. at 941. Despite the fact that Plaintiff had on-going care from several doctors and is "taking strong and potent narcotic

18

medications," Dr. Henderson found that Plaintiff's "mental impairment have not improved since [2012 and Plaintiff] continues to suffer severe head pain of organic origin and was advised that further brain surgery is needed due to ongoing trigeminal neuralgia. He is severely depressed, in chronic pain, and cannot sustain any type of gainful activity." Id. The ALJ did not mention this report or Dr. Henderson's 2014 opinion and did not explain its impact on the issue of Plaintiff's mental status during Time Period 1. See id. at 425–34.

Finally, the ALJ minimized the test results without providing legitimate reasons supported by substantial evidence. Ritchotte v. Astrue, 281 F. App'x 757, 759 (9th Cir. 2008) (remanding and holding "that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for declining to give controlling weight to the treating physician's assessment."). While ALJ Greenberg acknowledged that Dr. Henderson found Plaintiff's IQ to be 85, he did not incorporate that test result into his conclusion. AR at 433. Similarly, ALJ Greenberg acknowledged that Dr. Henderson found Plaintiff had a GAF score of 45, which he admitted can indicate serious difficulties in functioning, but he apparently disregarded this evidence because he stated that a GAF score is not dispositive, it is a "mere snapshot" of ability at one time, and this snapshot occurred "after the period at issue." Id. Again, this simplistic conclusion does not comply with the Appeals Council's directive to consider whether the 2012 medical evidence indicated limitations during Time Period 1, does not address the other evidence and opinions provided by Dr. Henderson, and does not satisfy the legal requirements to reject a treating physician's opinion. The ALJ's conclusion is further undermined by the fact that Dr. Miller found Plaintiff had a GAF score of 35 and Dr. Lessner found Plaintiff had a GAF score of 40. Id. at 735, 743. Even if (as ALJ Greenberg indicated) a GAF score offers only "a 'mere snapshot' of [a] claimant's ability to function at [a] particular time," three GAF scores given on three separate dates provide more than one snapshot of Plaintiff's ability to function. See id. at 433. ALJ Greenberg was required to state with specificity how the three GAF scores given by different physicians on separate dates did not relate back to Plaintiff's mental state during Time Period 1, especially since the GAF score of 40 was noted just three days after Time Period 1, and the GAF score of 45 was noted just ten days after Time Period 1. Id. at 735, 859.

The Appeals Council clearly advised the new ALJ that he had to consider the post-December 5, 2011 examinations, reports, and opinions of Drs. Henderson, Lessner, Miller, and Glassman to determine whether they establish that Plaintiff had mental impairments during Time Period 1. The Appeals Council explained in several paragraphs why it believed that the findings and conclusion of ALJ Harrell regarding Plaintiff's mental impairments could impact the determination of Plaintiff's mental impairments in Time Period 1. See id. at 583–84. Despite this clear road map, ALJ Greenberg failed to follow it. The ALJ did not consider and address the opinions and reports of Drs. Lessner, Miller, and Glassman, failed to include Dr. Glassman's report in the administrative record, failed to consider all of Dr. Henderson's opinions, and failed to provide legitimate reasons supported by substantial evidence for rejection Dr. Henderson's opinions. As explained above, the ALJ's errors are not harmless because there is significant medical evidence in the post-December 2011 reports indicating that Plaintiff may have had substantial mental impairment during Time Period 1. Accordingly, based on ALJ Greenberg's failure to follow the Appeals Council's remand order to consider the opinions of Drs. Lessner, Miller, and Glassman, and his failure to properly discredit Dr. Henderson's opinion, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** as to this issue and Defendant's Cross-Motion for Summary Judgment be **DENIED**.

## B. <u>Plaintiff's Allegation of Missing Records</u>

Plaintiff contends that the ALJ failed to fully develop the administrative record as required by the relevant law. See AR at 13–14. Plaintiff argues that he "underwent an examination . . . with Dr. Glassman and treatment with Dr. Grisolia in 2012 for occipital neuralgia," and that the ALJ[6] failed to include reports from both physicians in the administrative record. MSJ at 10. Plaintiff argues that the Appeals Council directed the ALJ to consider Dr. Glassman and Dr. Grisolia's reports and to include the reports in the administrative record, but ALJ Greenberg

---

[6] Plaintiff initially asserts that Defendant is at fault for not including the relevant reports in the record. MSJ at 10. In subsequent argument, Plaintiff repeatedly states that the ALJ was responsible for the incomplete record. See MSJ at 13–14; Reply at 2, 4. Because Plaintiff only places blame on Defendant once, the Court will only consider the allegations against the ALJ.

failed to do so. MSJ at 10, 14; Reply at 2, 4. Plaintiff states that while Dr. Grisolia's report is said to be located on pages 856–75, "it was nowhere to be found [in the AR]." Reply at 4.

Defendant argues that "contrary to Plaintiff's representation, the Appeals Council did not 'explicitly order[]' the ALJ to 'include Dr. Grisol[i]a's report' [in the Administrative Record]." Oppo. at 13. Defendant contends that "while Plaintiff represents that Dr. Grisolia 'review[ed] the evidence in totality' . . . , it is unclear what evidence from Plaintiff's treatment record the doctor reviewed and what formed the basis of his conclusion of Plaintiff's 'disabling trigeminal neuralgia' when the doctor noted himself that the neuralgia '[wa]s now being largely controlled.'" Id. at 13 (citing MSJ at Ex. 1). Defendants did not address Dr. Glassman's allegedly missing report. See generally id.

### 1. Legal Standard

In Social Security proceedings, "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (citing Thompson v. Schweiker, 665 F.2d 936, 941 (9th Cir. 1982)). Plaintiff, however, "bears the burden of proof to provide evidence to support his claim." Knibbs v. Berryhill, 731 F. App'x 684, 685 n.1 (9th Cir. 2018) (citing Mayes v. Massanari, 276 F.3d 453, 461–69 (9th Cir. 2001)). Once evidence is submitted, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459–60 (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)).

### 2. Discussion

Plaintiff is correct in his assertion that a report from Dr. Grisolia was indexed to appear as Exhibit 26F on pages 856–75 of the administrative record. See Reply at 4; ECF No. 67-13 at 1. Exhibit 26F is titled in its entirety: "Prior Folder Medical Evidence – subsequent claim, dated 12/11/2011 to 02/04/2012, from Dr. Sidrick Dr. Grisolia and Dr. Lessner." ECF No. 67-13 at 1. Had Plaintiff or his counsel reviewed the administrative record to ensure that all necessary evidence was included, they would have seen that exhibit 26F contained Dr. Henderson's February 4, 2012 report, and not Dr. Grisolia's individual report. AR at 856–75. Furthermore,

Plaintiff is incorrect in stating that Dr. Grisolia's report was "nowhere to be found" as to exhibit 26F.  See Reply at 4.  Dr. Henderson's February 4, 2012 report listed "materials from Dr. Sidrick, Dr. Grisolia, and Dr. Lessner" as sources of information used in the report  Id. at 856.  Therefore, Dr. Henderson's February report was informed at least in part by Dr. Grisolia's report.  See id.

As to Dr. Grisolia's report, Plaintiff had ample opportunity to ensure that it was included in the record.  On October 11, 2016, Plaintiff received a letter informing him of the ALJ hearing process and how to submit evidence to be included in his file; the letter further informed Plaintiff that he could see the evidence in his file "on or before the date of [his] hearing" and provided a phone number for Plaintiff to call if he wished to do so.  Id. at 653–56.  On December 8, 2017, Plaintiff received a notice that his hearing would occur on January 2, 2018, which provided Plaintiff with information on how to access "[c]opies of the pertinent exhibits tentatively selected for inclusion in the record . . . ."  Id. at 687–89.  On December 19, 2017, Plaintiff received a final reminder of his hearing and was informed of three ways in which Plaintiff could submit additional evidence to the record; the letter further provided how Plaintiff could view his electronic file.  Id. at 692–93.

Despite several notices and reminders instructing Plaintiff on how to submit evidence and/or review his file prior to his ALJ hearing, Plaintiff brought evidence for submission on the hearing date itself.  Id. at 448.  Although the five-day period to submit evidence had passed, ALJ Greenberg included in the record all five documents Plaintiff brought with him on January 2, 2018.  Id. at 449.  Of the five documents, only two constituted medical evidence—Exhibit 16E, which listed Plaintiff's medications, and Exhibit 35F, which contained a follow-up psychiatric evaluation from Dr. Henderson dated March 13, 2014.  Id. at 941–42.  In addition, Exhibits 36F, 37F, 38F, and 39F (containing medical evidence) may have been added to the record after the hearing based on the ascending chronology of the F Exhibits.  See ECF 67-13 at 1.

Importantly, the Appeals Council did not mention Dr. Grisolia in its order instructing the ALJ to include relevant records in the electronic file, establishing that ALJ Greenberg had no reason to know that Dr. Grisolia's report should have been included in the record.  Id. at 583–85.  Because Plaintiff repeatedly failed to submit Dr. Grisolia's report to ALJ Greenberg, despite

numerous opportunities to do so and ALJ Greenberg's willingness to accept tardy submissions—and because the Appeals Council did not mention Dr. Grisolia in its remand order—the Court finds Plaintiff's argument that ALJ Greenberg erred in excluding said report to be without merit. See Osbispo v. Colvin, 2015 WL 5705610, at *5 (C.D. Cal. Sept. 28, 2015) ("An ALJ's acknowledgment that the record lacks sufficient evidence despite plaintiff's repeated opportunities to submit additional evidence, does not shift the burden of proof to the ALJ."), judgment entered sub nom. Obispo v. Colvin, 2015 WL 5705642 (C.D. Cal. Sept. 28, 2015).

As to Dr. Glassman's report, the only information in the record concerning Dr. Glassman is in ALJ Harrell's April 2014 decision and the order of the Appeals Council dated June 21, 2016. AR at 584, 650. In its remand order, the Appeals Council both mentioned Dr. Glassman's report and cited certain opinions resulting from his consultative examination. Id. at 584. The Appeals Council also referenced ALJ Harrell's favorable decision, which included additional information regarding Dr. Glassman's examination and resulting opinions. See id. at 583–84, 650. Though Plaintiff lacked diligence by failing to submit Dr. Glassman's report to ALJ Greenberg, the absence of Dr. Glassman's report created an ambiguity in the record, given that the Appeals Council and ALJ Harrell specifically referenced and discussed the report. See id. at 584, 650. Because the record was ambiguous and did not allow for proper evaluation of Dr. Glassman's report—which the Appeals Council directed the ALJ to consider—the absence of this report triggered ALJ Greenberg's duty to develop the record further. See Mayes, 276 F.3d at 459–60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Accordingly, the Court finds that ALJ Greenberg failed to follow the Appeals Council's directive by not including in the record or considering Dr. Glassman's report and therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** as to this issue and Defendant's Cross-Motion for Summary Judgment be **DENIED**. Because the Court recommends that Plaintiff's Motion for Summary Judgment be granted based on ALJ Greenberg's failure to both consider and include the above-referenced physician opinions, in compliance with the Appeals Council's remand order, Plaintiff's and Defendant's remaining arguments as to Plaintiff's alleged physical

disability will not be addressed.

## C. **Remand Versus Award of Benefits**

Plaintiff argues that because ALJ Greenberg made "numerous errors" by failing to develop the record and consider physicians' opinions as directed by the Appeals Council, "the ALJ's decision denying benefits should be reversed and benefits awarded to [Plaintiff]." MSJ at 26. Defendant argues that even if the Court grants Plaintiff's Motion for Summary Judgment, "remand for further administrative proceedings is necessary when there are outstanding issues that must be resolved before a finding of disability may ensue." Oppo. at 15. Defendant explains that an award of benefits is not given solely for legal error and instead, must be based on the existence of a disability. Id.

District courts may award plaintiffs benefits "as a matter of law," crediting the evidence as true, if the Commissioner "fails to provide adequate reasons for rejecting the opinion of a treating or examining physician." Lester, 81 F.3d at 834. See also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true."); but see Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (holding that an award of benefits under the "crediting as true" doctrine is not mandatory in the Ninth Circuit, despite "seemingly compulsory language" in other cases). Furthermore, to direct an award of benefits, the record must be "fully developed . . . where further administrative proceedings would serve no useful purpose." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, as discussed above, ALJ Greenberg failed to fully develop the record by excluding the report of examining physician, Dr. Glassman, and by failing to consider and address the relevant opinions of Drs. Lessner, Miller, and Glassman. In addition, because the ALJ determined that Plaintiff did not have mental impairments and was not disabled during Time Period 1, the ALJ did not conduct the required Step 4 and 5 analyses. Because the record is not fully developed, the Court cannot determine whether Plaintiff was disabled during Time Period 1 and finds that additional administrative proceedings are necessary. As a result, an award of benefits is improper at this time. See Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138

(9th Cir. 2011) ("We do not disturb the district court's conclusion that, in fact, the ALJ failed to comply with the remand orders. We hold only that the court may not move from that conclusion directly to an order requiring the payment of benefits without the intermediate step of analyzing whether, in fact, the claimant is disabled."). Accordingly, the Court **RECOMMENDS** that ALJ Greenberg's decision be **REVERSED** and **REMANDED** for further administrative proceedings.

## CONCLUSION

Based on the foregoing reasons, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED,** Defendant's Cross-Motion for Summary Judgment be **DENIED,** and ALJ Greenberg's determination of non-disability be **REVERSED** and **REMANDED** for further administrative proceedings consistent with the opinion of the Court.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **August 23, 2019**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **September 6, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: 8/2/2019

Hon. Barbara L. Major
United States Magistrate Judge